IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

ONE 2008 CHEVROLET TAHOE
C1500, et al.,

         Defendants.

CIVIL ACTION FILE NO.

1:09-CV-0799-JFK

**ORDER AND WRITTEN OPINION**

On March 31, 2009, Plaintiff, the United States of America, filed an amended complaint for forfeiture seeking to forfeit one 2008 Chevrolet Tahoe C1500, VIN 1GNFC13018R219560 ("Defendant Vehicle") pursuant to 21 U.S.C. § 881(a)(4) and (a)(6); assorted jewelry ("Defendant Jewelry")[1] pursuant to 21 U.S.C. § 881(a)(6); $106,724.50 in United States Currency ("Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6); and one Smith and Wesson .38 caliber revolver and one Beretta 9000S .40 caliber handgun ("Defendant Firearms") pursuant to 21 U.S.C. § 881(a)(11).  [Doc. 2 ¶¶ 2-3].  On July 14, 2009, Claimant Carlos Duron ("Duron") filed a claim of interest stating that "he is the owner and entitled to possession" of all of the property

---

[1]The items included in Defendant Jewelry are listed in Plaintiff's Statement of Material Facts ("PSMF") ¶ 19. d. [Doc. 46-3].

("Defendant Property") listed on the forfeiture complaint. [Doc. 20]. Duron also filed an answer to the forfeiture complaint. [Doc. 21]. The parties consented to jurisdiction before the Magistrate Judge. [Doc. 27].

After the court denied Duron's motion in limine, seeking on Fourth Amendment grounds to suppress all evidence and information obtained and seized on November 19, 2008, as a result of the events occurring on that date [Docs. 35, 41], Plaintiff filed a motion for summary judgment on July 22, 2010, which was supplemented on August 24, 2010. [Docs. 46 and 52]. On August 23, 2010, Duron filed a response to the motion for summary judgment [Doc. 50]; however, although allowed additional time to file a supplemental response [Doc. 51], he did not do so. On September 30, 2010, Plaintiff filed a reply in support of the motion for summary judgment. [Doc. 56]. The motion for summary judgment [Doc. 46] is now before the court on the parties' briefs and the properly submitted affidavits and exhibits filed in this record.

## I.    Facts

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th

2

Cir. 2001).  However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).  In this regard, the court notes the difficulty it has in analyzing Duron's claims.  Duron's statement of material facts and his response to Plaintiff's summary judgment motion are comprised mostly of vague and conclusory allegations, statements setting forth legal conclusions and questions posed to the court.  [Doc. 50].  These are "insufficient to meet [Duron's] burden" at summary judgment.  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  Accord Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989) ("If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor."); and see Givhan v. Electronic Engineers, Inc., 4 F. Supp. 2d 1331, 1341 (M.D. Ala. 1998) (same); Robertson v. The Home Depot, Inc., 976 F. Supp. 1467, 1476 (S.D. Fla. 1997) (same).

Additionally, contrary to this court's local rules and the court's summary judgment notice to the parties [Doc. 42], Duron failed to respond, with citation to the record, to any of Plaintiff's statement of undisputed facts.  Local Rule 56.1B.(2), N.D. Ga., provides that the respondent to a summary judgment motion shall include a

3

response to the movant's statement of undisputed facts and shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.  Because Duron failed to comply with this rule and the court's notice, the court accepts as admitted those facts in Plaintiff's statement that Duron has not "specifically controverted" with citation to relevant portions of the record.  L.R. 56.1B.(2), N.D. Ga.  <u>See Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.</u>, 736 F.2d 656, 658 (11th Cir. 1984) (a party opposing summary judgment "cannot rest on his pleadings to present an issue of fact" and must "respond with affidavits, depositions, or otherwise").  And Duron's Statement of Material Facts ("DSMF") will not be considered by the court, because, as pointed out by Plaintiff, not one of the "facts" is supported by citation to an affidavit or other sworn testimony or to properly admitted exhibits and because most of the alleged "facts" are irrelevant, conclusory, or argumentative.  <u>See</u> LR 56.1 B.(2), N.D. Ga.

Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Plaintiff's motion [Doc. 46] for summary judgment.

On November 19, 2008, Drug Enforcement Administration ("DEA") agents were conducting surveillance of a meeting between an undercover agent ("UC"),

4

David Maldonado ("Maldonado"), and his sister, Meyssi Saavedra-Maldonado ("Saavedra"), in Lawrenceville, Georgia. [PSMF ¶ 1]. Saavedra arrived at the meeting in the Defendant Vehicle. [Id.]. The purpose of the meeting was for the UC to negotiate the purchase of one kilogram of cocaine from Saavedra. The UC told Saavedra that if the quality of the cocaine was good, he would purchase an additional sixty kilograms. Saavedra stated that she could give a price of $29,000 per kilogram for a purchase of over twenty kilograms. [Id.]. Saavedra told the UC that she had to go to a different location to pick up the cocaine and that she would return. She then left in the Defendant Vehicle. [Id.].

Saavedra returned followed by two other vehicles. The vehicles stopped near one another. [PSMF ¶ 3]. Saavedra left the Defendant Vehicle and walked to another vehicle and retrieved a kilogram of cocaine. She brought the cocaine to the UC, who inspected it while seated in the Defendant Vehicle. [Id.]. At that time, somebody in one of the other vehicles became alerted to law enforcement surveillance. Saavedra immediately ended the negotiation and fled to a nearby apartment. [Id.].

A few moments later, Maldonado entered the Defendant Vehicle and drove to a nearby shopping plaza, where he walked around for approximately eighteen minutes. [PSMF ¶ 4]. At that point, Duron drove up to the plaza, and Maldonado entered

5

Duron's vehicle.  Duron's vehicle departed from the plaza at a high rate of speed, and the Defendant Vehicle was left in the plaza parking lot.  [Id.].  DEA agents seized the Defendant Vehicle approximately two hours later and recovered one kilogram of cocaine from the backseat floor.  [Id.].

Maldonado was placed under arrest at a Waffle House in Oakwood, Georgia, approximately one hour after leaving the shopping plaza.  The keys to the Defendant Vehicle were recovered from his pocket.  [PSMF ¶ 5].  Duron, who had dropped Maldonado at the Waffle House, was placed under arrest shortly after Maldonado. [Id.].  After being advised of his Miranda rights, Duron stated that he and his girlfriend, later identified by Duron as Saavedra,[2] had purchased the Defendant Vehicle together through his partner's business; the partner being Vince Reed and the business being Freedom Auto Sales.[3]  [PSMF ¶ 6].  Defendant stated that he was self-employed

---

[2]Duron and Saavedra are now married.  [PSMF ¶ 15].

[3]Duron now states, "The Tahoe is NOT mine.  It never was.  I never made a claim for it.  Please check the paperwork.  Vince Reed on behalf of Freedom Auto Sales made that claim."  [Doc. 50, Basic Facts and Proof of Prejudice by My Attorney and the Prosecutor, ¶ 5 (emphasis in original)].  In the Claim of Interest filed on Duron's behalf, "Duron states that he is the owner and entitled to possession of . . . One 2008 Chevrolet Tahoe C1500, VIN 1GNFC13018R219650. . . ."  [Doc. 20].  In his answer to the forfeiture complaint, Duron denied that he stated to arresting agents that he and Saavedra purchased the Defendant Vehicle together through Reed's business, Freedom Auto Sales.  [Doc. 21 at 3].

as a car dealer. Saavedra and Maldonado were unemployed at the time of this incident. [Plaintiff's SMF ¶ 11].

Later on the evening of November 19, 2008, agents executed search warrants at Duron's house, located at 127 Hillcrest Drive, Commerce, Georgia, and at Saavedra's house, which she shares with another brother, Ever Pacheco-Maldonado, at 153 Hillcrest Drive, Commerce, Georgia. [PSMF ¶ 7]. The search warrants were obtained by Georgia State Patrol ("GSP") Captain Chad Knight. [PSMF ¶ 8; Declaration ("Dec.") April Moody, Ex. A]. GSP Corporal Charles Chapeau spoke with two of Duron's neighbors, who described heavy traffic in and out of both the 127 and 153 Hillcrest Drive residences. [PSMF ¶ 8].

Upon executing the search warrant at Duron's residence, 127 Hillcrest Drive, agents seized $106,724.50, the Defendant Currency, from inside a safe in the master bedroom closet; the Defendant Jewelry from various locations, mainly in the master bedroom; and the Defendant Firearms from a night stand in the master bedroom. [PSMF ¶ 9; Dec. April Moody, Ex. A].[4] Agents also seized documents indicating that

---

[4]Agents also seized several quantities of ammunition from locations throughout the residence for a number of different types of weapons and a 12-gauge shotgun from the master bedroom closet. [Id.]. From the basement of the residence, agents seized food saver vacuum sealers, a digital scale, rolls of vacuum seal bags, miscellaneous loose bags and rolls of clear packing tape. [Dec. April Moody, Ex. A].

7

Duron had purchased the Defendant Vehicle from Freedom Auto Sales.  [PSMF ¶ 9].

At the residence located at 153 Hillcrest Drive, agents seized 3.5 ounces of cocaine and 24.8 grams of crack cocaine from the laundry room, as well as additional jewelry valued at approximately $80,000 and $21,581 in United States Currency from a safe in the master bedroom.  The jewelry and currency were administratively forfeited.  [PSMF ¶ 10].

Following the November 19, 2008, incident, Duron, Saavedra and Maldonado were charged with violating 0.C.G.A. 16-13-31(a).  Although the charges were initially dismissed, the charges were later re-instated, and Duron was indicted for two separate drug trafficking conspiracies. [PSMF ¶ 12]. Duron, Maldonado, Saavedra and Francis Perdomo were charged in Gwinnett County criminal indictment number 10B-1100, based on the incident on November 19, 2008, and Duron was tried in the summer of 2010.  Duron was convicted on July 23, 2010, of violating O.C.G.A. 16-13-31(a). [PSMF ¶ 13; Doc. 52, Ex. 1].  Duron was sentenced to thirty years, with twenty-eight of those to be served in confinement.  [Doc. 52, Ex. 1].

Duron is also charged with violating O.C.G.A. 16-13-31(a), in Gwinnett County criminal indictment 09B–4790.  The indictment stems from an incident that took place on August 13, 2009, in which Duron was involved in the sale of one-hundred three

8

kilograms of cocaine.  [PSMF ¶ 14].  The indictment relates to an incident where Duron arranged to have cars used by the buyers, his customers, to be picked up by members of the Gulf Cartel, a drug trafficking organization with which Duron is associated.  [Id.].  Those cars were to be loaded with ten kilograms of cocaine each and then returned to the buyers with the money to be delivered the following day.  Further evidence indicated that, if that transaction went well, another fifteen kilograms would be purchased soon thereafter.  [Id.].  However, law enforcement officers intercepted the buyers' cars while they were being loaded at 500 Sunfield Drive in Lilburn, Georgia, a stash house used by the Gulf Cartel.  One-hundred three kilograms of cocaine were recovered from the stash house subsequent to execution of a search warrant, and one kilogram of cocaine was recovered from one of the cars.  A truck believed to contain the remaining nine kilograms fled the scene.  [Id.].

The United States Marshals Service ("USMS") maintains custody, pending the outcome of any forfeiture proceedings, of property, including jewelry, that has been seized by the DEA.  [PSMF ¶ 16].  All such jewelry is stored in Texas, at which time the USMS obtains from a certified gemologist appraisals for each piece of jewelry to determine its approximate replacement value, its approximate fair market value, and the estimated value it is expected to garner at auction if the jewelry is forfeited and

9

liquidated.  [PSMF ¶¶ 17-18, 21].  The items of jewelry[5] seized from execution of the search warrant at Duron's residence were appraised by a certified gemologist at Austin Jewelry Appraisers.  The appraised values for all of the jewelry seized are:

    (a)    a replacement value of $124,445;

    (b)    a liquidation value of $32,680; and

    (c)    a fair market value of $61,860.

[PSMF ¶¶ 22-23].

Once the USMS obtains custody of any vehicle, they conduct an appraisal.  This is accomplished by USMS personnel accessing the NADA Official Used Car Guide and entering the VIN, any optional equipment on the vehicle, and the mileage on the vehicle.  [PSMF ¶ 24].  According to the appraisal the USMS obtained from NADA, the Clean Trade-In value of the Defendant Vehicle is $32,600, without the optional equipment value added and the mileage adjustment.  [PSMF ¶ 25; Dec. Cheryl Krohn, Ex. B].  With those adjustments, the Clean Trade-In value is $35,800.   [Dec. Cheryl Krohn, Ex. B].

According to HUD-1 Settlement Statements for the 127 and 153 Hillcrest Drive residences, the contract sale price for each residence was $146,690.00, secured by a

_____

[5]A complete list is provided in PSMF 19. d.

loan for each residence from Community Trust & Bank.  The transactions occurred on August 13, 2007.  Duron was the purchaser for both residences and secured the loan for each residence.  The maturity date for each loan was August 13, 2009.  [PSMF ¶¶ 26-30; Dec. Matthew Lillo, Exs. A, B, C].  Apparently, the loans were modified on April 28, 2008, with the principal for the residence located at 127 Hillcrest Drive then being $110,756.58, and a new loan maturity date of May 10, 2010, and monthly installments due of $1,400, and with the principal for the residence located at 153 Hillcrest Drive then being $111,111.19, and a new loan maturity date of May 10, 2010, and monthly installments due of $1,300.  [Doc. 50-3].  And, on May 18, 2010,[6] the maturity dates for both loans were extended to May 10, 2011, with the same monthly payments for each residence.  At that time, the principal balance on the residence at 127 Hillcrest Drive was $70,036.68 and on the residence at 153 Hillcrest Drive was $53,092.57.  [Id.].  The residences located at 127 Hillcrest Drive and 153 Hillcrest Drive are adjoining properties.  [PSMF ¶ 31].

Duron's federal tax return for 2006 shows an adjusted gross income of $24,031, and the return for 2007 shows an adjusted gross income of $37,546.  [Doc. 46-3, Ex.

---

[6]There appears to be a typographical error on the documentation for the loan extension for the residence at 127 Hillcrest Drive which indicates that the modification occurred on April 28, 2008.  [Id.].

11

1].  The Internal Revenue Service ("IRS") has no record of Duron filing a 2005 tax return, and as of May 14, 2009, there was no record of a 2008 tax return.  [Id.].

Additional facts will be set forth as necessary during discussion of the motion for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2) (amended 2009); accord United States v. $291,828.00 In United States Currency, 536 F.3d 1234, 1236 (11th Cir. 2008) (same).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

12

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one.  See Celotex, 106 S. Ct. at 2553.  The movant is not required to negate his opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See $291,828.00 In United States Currency, 536 F.3d at 1234; Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)); accord United States v. $6,207.00 In United States Currency, __ F. Supp. 2d __, __, 2010 WL 3825596, at *2 (M.D. Ala. September 24, 2010) ("Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions,

13

answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citations and internal quotation marks omitted).

## III.   Discussion

### a.   Civil Asset Forfeiture Provisions

The determination whether the Defendant Property is subject to civil forfeiture is controlled by the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, of April 2000.  "Under the CAFRA, the 'burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. . . .'"  United States v. $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d 1036, 1039 (S.D. Ala. 2007) (citation omitted).  "The government 'may use both circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'"  $291, 828.00 In United States Currency, 536 F.3d at 1237 (citation omitted).  And "[t]he government may also use evidence gathered after the filing of the complaint for forfeiture to meet its burden."  Id.; accord $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1040 (same).  "The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier of fact to believe that the existence of a fact is more probable than its

14

nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1039 (citations and internal quotation marks omitted). "Once the Government has met its burden, the burden then shifts to the claimant to prove by a preponderance of evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture." Id. at 1040; accord $6,207.00 In United States Currency, 2010 WL 3825596, at *4 (same). "'The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner.'" $6,207.00 In United States Currency, 2010 WL 3825596, at *4 (citation omitted).

Additionally, a claimant, such as Duron, must satisfy the threshold requirements of Article III standing in order to contest the forfeiture action. United States v. $960,000.00 In U.S. Currency, 307 Fed. Appx. 251, 255 (11th Cir. 2006) ("It is well settled that a claimant must demonstrate an 'ownership or possessory interest in the property seized' to establish standing under Article III to contest a civil forfeiture of seized property.") (citation omitted). "Moreover, a claimant asserting that he has standing to contest a forfeiture bears the burden at all stages of litigation of establishing his interest." Id. "[T]he alleged ownership interest in the seized property

15

must be supported in the same way as any other matter on which the claimant bears the burden of proof." Id.

Based on Duron's admissions in his response to the motion for summary judgment, the court finds that he cannot establish Article III standing to contest the civil forfeiture of the Defendant Vehicle. Although Duron filed a claim of interest asserting his right to contest forfeiture of the Defendant Vehicle [Doc. 20][7], Duron now states, "The Tahoe is NOT mine. It never was. I never made a claim for it. Please check the paperwork. Vince Reed on behalf of Freedom Auto Sales made that claim." [Doc. 50, Basic Facts and Proof of Prejudice by My Attorney and the Prosecutor, ¶ 5 (emphasis in original)]. And, the court notes that in his answer to the forfeiture complaint, Duron denied that he stated to arresting agents that he and Saavedra purchased the Defendant Vehicle together through Reed's business, Freedom Auto Sales. [Doc. 21 at 3].

For these reasons, the court **GRANTS** the Plaintiff's motion for summary judgment on the Defendant Vehicle.

b.      **Controlled Substances Act ("CSA") and Forfeiture of Remaining**

---

[7]In the Claim of Interest filed on Duron's behalf, "Duron states that he is the owner and entitled to possession of . . . One 2008 Chevrolet Tahoe C1500, VIN 1GNFC13018R219650. . . ." [Doc. 20].

16

**Defendant Property**

Plaintiff seeks to forfeit the Defendant Jewelry and Defendant Currency in this case pursuant to 21 U.S.C. § 881(a)(6).  That subsection provides that the following property is subject to forfeiture:

> All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this chapter.

21 U.S.C. § 881(a)(6).  "To obtain civil forfeiture, the government must establish by a preponderance of evidence 'a substantial connection between the property and the offense.'" $291,828.00 In United States Currency, 536 F.3d at 1237 (citation omitted); accord $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1040. "The Government need not, however, prove that money [or other property] is traceable to a *specific transaction in illicit drugs*; it need only prove by a preponderance of the evidence that the money is *substantially connected* to drug trafficking generally." $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1040 (emphasis in original); accord United States v. $183,791.00 In United States Currency, 391 Fed. Appx. 791, 794 (11th Cir. August 9, 2010) (noting that the court looks at the "totality of the circumstances," which may include circumstantial evidence, the court

AO 72A
(Rev.8/82)

affirmed that "the government is not required to produce evidence connecting the money to a particular narcotics transaction"); <u>United States v. $22,991.00, More or Less, In United States Currency</u>, 227 F. Supp. 2d 1220, 1231 (S.D. Ala. 2002) ("there [is] no requirement that the government tender direct evidence of a connection between the subject property and a specific drug transaction[,]" and "the presentation of circumstantial evidence by the government [is] a permissible form of proof in a civil forfeiture action").

The Plaintiff's first argument in support of forfeiture of the Defendant Jewelry and Defendant Currency is Duron's unexplained possession of the large amount of currency, valuable jewelry, vehicle, and two homes.  [Doc. 46 at 7-9].  The Plaintiff also points to the fact of Duron's conviction for the drug offense leading up to the seizure of the Defendant Property and his current indictment for further drug trafficking activity.  [<u>Id.</u> at 10-13].  In noting that the Government is not required to prove a direct connection between a drug deal and the property subject to forfeiture, the District Court in the Middle District of Alabama stated:

> "Rather, 'whether a [claimant's] verifiable income cannot possibly account for the level of wealth displayed and whether there is strong evidence that the [claimant] is a drug trafficker, then there is [a preponderance of evidence] to believe that the wealth is either the direct product of illicit activity or that it is traceable to the activity as

proceeds.'"

United States v. Two Parcels of Real Property Located in Russell County, Alabama, 868 F. Supp. 306, 311 (M.D. Ala. 1994) (citations omitted); accord United States v. $174,206.00 In U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) (the "evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income . . ., satisfies the burden imposed by the statute"); $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1041-43 (finding that claimant's lack of legitimate and verifiable income to account for the possession of a large amount of cash along with "narcotics-related criminal history" of claimant and associates meets the government's burden); $22,991.00, More or Less, In United States Currency, 227 F. Supp. 2d at 1232-35 (finding, among other factors, that claimant's possession of unexplained currency and personal involvement in drug trade before and after seizure, supported grant of summary judgment seeking forfeiture).  In fact, the possession of a large sum of currency amounts to strong evidence of a connection to illegal activity. See $183,791.00 In United States Currency, 391 Fed. Appx. At 795; $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1041 (citing United States v. $121,100.00 In United States Currency, 999 F.2d 1503, 1097 (11th Cir. 1993)).  In this

19

case, Plaintiff presented unrebutted evidence that Duron was in possession of a large amount, over $100,000 in United States Currency, that he had other unexplained wealth, such as two homes and valuable jewelry, and that he was personally involved in drug trafficking activity.

As a result of the search of Duron's residence at 127 Hillcrest Drive, agents seized $106,000 in currency from a safe in the master bedroom and various pieces of jewelry with a replacement value of $124,445 and a fair market value of $61,860.00. [PSMF ¶¶ 9, 22-23]. Also, in August 2007, Duron purchased the residence at 127 Hillcrest Drive as well as the next door residence at 153 Hillcrest Drive, in which his now wife, Saavedra, lived at the time of the incident. The contract sale price for each residence was $146,690.00, secured by a loan for each residence from Community Trust & Bank. [PSMF ¶¶ 26-30; Dec. Matthew Lillo, Exs. A, B, C]. Although Duron has extended the maturity dates for the loans, first from August 2009, then to May 2010, and now May 2011, by April 2008 (less than eight months after purchase), Duron had paid down the principal for both residences in total over $70,000 (as well as making the necessary monthly interest payments of approximately $1,000 each on the loans). And by May 2010, Duron had paid down the principal balances on both residences in total almost $100,000 (again, as well as making interest payments).

20

[Doc. 50-3].

However, Duron's federal tax return for 2006 shows an adjusted gross income of only $24,031, and the return for 2007 shows an adjusted gross income of only $37,546.  [Doc. 46-3, Ex. 1].  The Internal Revenue Service ("IRS") has no record of Duron filing a 2005 tax return, and as of May 14, 2009, no record of a 2008 tax return. [Id.].  This income would barely, if at all, cover living expenses for each calendar year, much less explain the presence of over $100,000 in currency and accumulated jewelry valuing over $60,000 - not to mention purchasing two homes and paying down the principal balances to the tune of over $70,000 in eight months.[8]

Duron's attempt to offer explanations for this wealth, which is contained in a rambling, confusing, and conclusory narrative and for which Duron provides no substantiation (excepting the loan documents) in any form, that is, neither affidavit, citations to the record, nor exhibits, simply do not satisfy his burden to establish that there is a genuine issue of material fact - he has not established by a preponderance of the evidence that the Defendant Property is not subject to forfeiture.  See United States v. $14,066.00 In United States Funds, 2010 WL 4823375, at *4 (M.D. Ga. November

---

[8]Due to the fact that Duron denied ownership of the Defendant Vehicle and the court has granted summary judgment on that basis, the value of any vehicles will not be considered in the court's analysis.

22, 2010) ("Claimant may not rest on the mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial."); $52,000.00, More or Less, In United States Currency, 508 F. Supp. 2d at 1044-45 (although claimant provided explanations for the possession of the currency and for having the property subject to forfeiture, "the [c]laimant [did] not support his assertions with affidavits or any other admissible evidence, nor does his Response cite this Court to any legal authority in support of his argument that summary judgment is not proper[;]" therefore, "the [c]laimant's bald assertions, absent supporting evidence, affidavits or citation to the record before this Court or legal authority, do not give rise to a genuine issue of material fact to preclude the entry of summary judgment"). Duron's recitation of how he obtained various pieces of the jewelry over time and why he had $106,000 in currency in his residence and how he obtained those and other funds, accompanied by directions to the court to look at various documents - none of which the court notes were provided much less properly authenticated and submitted with the response [Doc. 50-1] - do not support Duron's claims, especially given the fact the court finds these assertions reflect highly unlikely sources for Duron's unexplained wealth.  See United States v. $5,173.00 In United States Currency, 2008 WL 4280369, at *5 (M.D. Ga. September 16, 2008) (As "Plaintiff correctly notes,

'[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture.'") (citation omitted).

In addition to the large amount of currency on hand and Duron's lack of a substantiated explanation for his unexplained wealth, Plaintiff presented substantial evidence of Duron's involvement at the time, and since, in drug trafficking.  First, Duron was convicted of the drug transaction leading to these seizures.  [PSMF ¶¶ 12-13; Doc. 52, Ex. 1].  And Duron is under indictment for a series of transactions that culminated in the seizure of over one-hundred kilograms of cocaine in August 2009. [PSMF ¶ 14].  See $14,066.00 In United States Funds, 2010 WL 4823375, at *3 ("Claimant has prior drug convictions, which are highly probative in the forfeiture calculation."); $5,173.00 In United States Currency, 2008 WL 4280369, at *5 ("previous and post seizure drug related convictions are also persuasive"); Two Parcels of Real Property Located in Russell County, Alabama, 868 F. Supp. at 311 (arrests and convictions for possession of drugs are relevant to a determination as to whether the government has satisfied its burden).  Finally, the seizures on November 19, 2008, support finding a connection between the Defendant Property and drug dealing.  At Duron's residence, agents seized apparent drug paraphernalia.  From the basement of

23

the residence, agents seized food saver vacuum sealers, a digital scale, rolls of vacuum seal bags, miscellaneous loose bags and rolls of clear packing tape, and, as will be discussed further *infra*, various firearms and types of ammunition which were seized from locations throughout the residence.  [PSMF ¶ 9; Dec. April Moody, Ex. A].  And at the 153 Hillcrest Drive residence, owned by Duron and occupied by Saavedra, Duron's then unemployed girlfriend and co-conspirator in the aborted drug transaction, agents seized 3.5 ounces of cocaine and 24.8 grams of crack cocaine from the laundry room, as well as additional jewelry valued at approximately $80,000 and $21,581 in United States Currency.  [PSMF ¶ 10].

Viewing the totality of the circumstances, and judging "the evidence 'not with clinical detachment but with a common sense view to the realities of normal life,'" $22,991.00, More or Less, In United States Currency, 227 F. Supp. 2d at 1237 (citation omitted), the court finds that Plaintiff has established by a preponderance of the evidence that the Defendant Jewelry and Defendant Currency are subject to forfeiture and that Duron has failed to meet his burden in refuting that evidence.  There is no genuine issue of material fact, and summary judgment should be granted.

Plaintiff seeks to forfeit the Defendant firearms pursuant to 21 U.S.C. § 881(a)(11), which provides in pertinent part that the following property is subject to

24

forfeiture: "Any firearm . . . used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) [generally, controlled substances] or (2) [materials, products or equipment related generally thereto] and any proceeds traceable to such property." See also $22,991.00, More or Less, In United States Currency, 227 F. Supp. 2d at 1236.  Plaintiff must prove by a preponderance of evidence a substantial connection between the Defendant Firearms and drug activity.  Id.  In this regard, "[i]t is generally recognized that firearms are 'tools of the trade of those engaged in illegal drug activities and are highly probative in providing criminal intent.'"  Id. at 1237 (quoting United States v. Martinez, 808 F.2d 1050, 1057 (5th Cir. 1987)); see also United States v. Prather, 279 Fed. Appx. 761, 766 (11th Cir. 2008) ("When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location."); United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (in a drug investigation, firearms are "'tools of the trade'") (citation omitted).  The District Court further stated that "'[e]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales . . . glassine bags, cutting equipment and other narcotic

AO 72A
(Rev.8/82)

equipment.'" Id. (quoting United States v. Perez, 648 F.2d 219, 224 (5th Cir. 1981)).

The court outlined the facts *supra* supporting a finding that Duron was involved in drug trafficking activity, that he kept proceeds traceable to that activity - including a substantial amount of currency - in his residence, and that he kept drug paraphernalia in the residence.   The Defendant Firearms were found in the residence in close proximity, that is, in the master bedroom, to the currency and other assets.   [PSMF ¶ 9; Dec. April Moody, Ex. A].  This evidence satisfies Plaintiff's burden of showing by a preponderance of evidence a substantial connection between the firearms and drug dealing.   And, although Duron responds, again in a rambling, confusing, and conclusory narrative - that mainly poses a lot of questions but provides no substantiation for any of his claims or the answers he apparently hopes the court will provide [Doc. 50-1], his response does not satisfy his burden to establish by a preponderance of evidence that the Defendant Firearms are not subject to forfeiture. There is simply no genuine issue of material fact for trial.

For these reasons, the court **GRANTS** Plaintiff's motion for summary judgment on the Defendant Jewelry, the Defendant Currency and the Defendant Firearms.

**IV.     Conclusion**

For the foregoing reasons and cited authority, Plaintiff's motion [Doc. 46] for

26

summary judgment is **GRANTED** and the court **ORDERS** that **JUDGMENT** be entered in favor of Plaintiff and against Defendant Property and that the Defendant Vehicle, Defendant Jewelry, Defendant Currency, and Defendant Firearms be forfeited to the permanent custody and control of the United States.  The United States Marshal Service is **DIRECTED** to take the appropriate and customary action with respect to these items.

The court furthers **DENIES** as **MOOT** Duron's motion [Doc. 58] requesting additional time to prepare for trial.

**SO ORDERED** this 19th day of January, 2011.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

27